IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JENNIFER HOOTMAN,                                          Civ. No. 09-1168-AC

                              Plaintiff,                   FINDINGS AND
                                                          RECOMMENDATION
          v.

COMMISSIONER of Social Security,


                              Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

        The claimant, Jennifer Hootman ("Hootman"), appeals the denial of Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of Social

Security, Michael J. Astrue ("Commissioner"). Hootman claims to have been disabled from May 24,

FINDINGS AND RECOMMENDATION            1                          {MEC}

2002, and claims she is limited by Disassociative Identity Disorder, migraines, and limitations due to obesity, in addition to the personality disorder, anxiety disorder, and dysthymia found by the Administrative Law Judge ("ALJ"). Hootman alleges the ALJ erred in her denial of benefits in the third and fifth steps of the disability benefits analysis by improperly rejecting testimony by Hootman, Hootman's treating physician, and third-party witnesses.

The ALJ properly found Hootman, her treating physician, and third-party witnesses not credible, and disregarded that testimony for the purposes of both steps three and five.  The ALJ adequately developed the record in this case.  Finally, the ALJ properly relied on the testimony of the vocational expert in her step five analysis.  Accordingly, the Commissioner's decision should be affirmed.

*Background*

Hootman, born in October of 1981, was 20 years old at the alleged onset date of May 2002. (Admin. R. 26-27.)  Hootman has a history of placement in foster and group homes. (Admin. R. 17.) Her last date of eligibility is December 31, 2004. (*Id*.)  She reported that she suffered physical, emotional, and sexual abuse throughout her childhood; she self-mutilated and attempted suicide. (*Id*.)  She has a history of treatment in psychiatric facilities, and has been treated for a bipolar condition. (Admin. R. 17-18.)

Hootman offers differing reports about her educational history.  (Admin. R. 24.)  She has on one occasion reported completing a Bachelor of Science degree, and has alternatively reported excelling in high school and being placed in special education classes.  (*Id*.)

Hootman has work experience as a sales clerk, appointment/schedule clerk, in-home care provider, reception clerk, telemarketer, customer service representative, network cable installer,

cashier, fast food worker, and camp counselor.  (Admin. R. 25.)  However, none of this work was performed consistently or on a sufficiently long-term basis to constitute "substantially gainful activity." (Admin. R. 26.)

The ALJ decided this case in October of 2007. (Admin. R. 27.)  The ALJ found the following: Hootman has not engaged in substantially gainful activity since the alleged onset date (Admin. R. 17); Hootman's impairments are a personality disorder, an anxiety disorder, and dysthymia (*id*.); Hootman has a history of treatment for bipolar disorder and post-traumatic stress disorder stemming from sexual abuse (Admin. R. 18); though Hootman sought out Dr. Dodson to work on personality integration (Admin. R. 18), there was not sufficient evidence that she suffered from Disassociative Identity Disorder (Admin. R. 19); Hootman's impairments were not demonstrated to be severe enough to equal a 12.08 listing (Admin. R. 20); Hootman can perform work at all exertion levels, but is limited to "simple tasks involving minimal social interaction and no interaction with the public" (Admin. R. 21); Hootman is not credible in regards to the severity of her impairments(Admin R. 23); the treating mental health professional's testimony should have less weight than evidence provided by other mental health professionals (Admin. R. 25); Hootman has no past relevant work experience (*id*.); and jobs which fit Hootman's Residual Functioning Capacity, such as janitor, dishwasher, and laundry worker, exist in significant numbers in the U.S. economy (Admin. R. 26).   Hootman appealed the ALJ's decision, but the Appeals Council has declined to review her case.  (Admin. R. 6.)

*Legal Standard*

I.  Disability Analysis

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled. If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functioning capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the

FINDINGS AND RECOMMENDATION          4                    {MEC}

claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

II. Standard of Review

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)). *See also Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Baston*, 359 F.3d at 1193.

*Discussion*

Hootman makes several assignments of error.  Hootman contends that the ALJ erred by improperly rejecting her testimony, as well as testimony by her treating doctor and lay witnesses, which led to an improper step three finding.  Hootman also contends that the ALJ erred in step five of the disability analysis, by not including all of her restrictions in the vocational hypothetical.

I. Testimony of Claimant

A claimant can be determined to be "not credible" for a variety of reasons.  Factors to be considered in a credibility determination include the claimant's reputation for truthfulness, inconsistent statements, inconsistency in conduct, a lack of cooperation during examination or the ALJ hearing, and discrepancies between the symptoms of which the claimant complains and her daily activities, work history, or third-person testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ is responsible for determining credibility (*Edlund*, 253 F.3d at 1156), and "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 298 F.3d at 958 (citing *Brunnell v Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)).

The ALJ gave specific reasons for finding Hootman not credible, both in the medical evidence and Hootman's own testimony.  Cheryl S. Brischetto, Ph.D., noted that while the claimant had some weakness in attention and memory during the screening, she seemed capable during their session together.  (Admin. R. 20.)  Dr. Brischetto reported that it was "questionable whether the claimant was putting forth full effort." (*Id.*)  Paula M. Nordstrom, Ph.D., reported that she dismissed

the results from the MMPI-2 test she performed on Hootman due to "random responding or misunderstanding of items consistent with a 'Fake Bad' profile." (Admin. R. 18.) The ALJ referenced the independent medical expert Robert J. McDevitt, M.D., who "testified that the objective evidence and the claimant's testimony contain multiple inconsistencies." (Admin. R. 23.) The ALJ also observed that Hootman claimed to suffer from other impairments, such as bipolar disorder and migraines, which were not supported by objective evidence. (Admin. R. 22-23.)

Family members have referred to Hootman as "sneaky" and described her behavior as "chronic lying." (Admin. R. 23.) Hootman has testified inconsistently about her education level and aptitude for schoolwork. (Admin. R. 24.) Hootman performed tasks in her home consistent with the ability to perform work-related activities, despite her claims to the contrary. (*Id*.) Hootman was inconsistent and uncooperative, has had her credibility called into question by third parties, and has made complaints which depart from her demonstrated abilities. Based on the record, the ALJ provided sufficient findings to support her determination that Hootman was not credible and did not arbitrarily discredit Hootman's testimony.

II. Testimony of a Treating Doctor

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan*, 242 F.3d at 1148. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ need not accept the opinion of a doctor if that opinion is "inadequately supported by clinical findings," such as treatment notes or objective medical findings.

*Tonapetyan*, 242 F.3d at 1149. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." (*Id*.) So long as the opinion of a non-examining, non-treating physician "is not contradicted by all other evidence in the record," the ALJ may rely on that opinion when drawing conclusions. *Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989).

The ALJ in this case chose to give greater weight to non-examining medical expert Dr. McDevitt, rather than to Hootman's treating mental health specialist, Donald G. Dodson, Ph.D. (Admin. R. 19.) Dr. McDevitt concluded that Hootman's record and medical history did not support a diagnosis of Disassociative Identity Disorder. (*Id*.) The ALJ noted Dodson did not mention observing these multiple personalities in his notes, nor did he administer psychological testing, instead relying on notes from Hootman's sister to reach his diagnosis. (*Id*.) Additionally, Dr. Brischetto, who performed a psychological evaluation of the claimant, found no indication of multiple personality disorder. *Id*. The ALJ chose to disregard Dobson due to medical reports which contradicted him and a lack of objective medical evidence which supported his opinion. This rationale constitutes a specific and legitimate reason to disregard Dodson's testimony.

## III. Testimony of Lay Witnesses

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996)). An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511. An ALJ need not give extensive explanation of lay

FINDINGS AND RECOMMENDATION          8          {MEC}

testimony found to be not credible: an "arguably germane" justification will constitute substantial evidence which should be accepted by this court. *Id*. at 512.

The ALJ found that testimony given by Hootman's sister Elizabeth Rainbolt, with whom Hootman was living, about Hootman's Disasociative Identity Disorder was not consistent with the record or medical evidence. (Admin. R. 24.) Rainbolt's testimony that Hootman would forget to eat was deemed by the ALJ as inconsistent with the medical record in that the claimant is massively obese. (*Id*.) The ALJ also noted that Rainbolt expressed a desire to have Hootman find her own residence and, thus, had motivation to secure disability payments for Hootman. (*Id*.)

Hootman's roommate, Angela Williams, states that Hootman suffers dehabilitating migraines, but the ALJ dismissed this testimony as inconsistent with the record. (*Id*.) Nowhere in the record is there any mention of the claimant seeking treatment for migraines. (*Id*.)

The ALJ found that the testimony of Hootman's friend, Ronald Morse, was based on observations from 2000 and was not relevant to her condition in 2002. (*Id*.) The ALJ also noted that Morse appeared to be exaggerating to help Hootman secure disability benefits. (*Id*.) The ALJ gave germane justifications for her determination to disregard the testimony of these third-party lay witnesses, and thus properly disregarded the evidence they presented.

IV. Step Three Analysis

The ALJ found that the credible evidence presented did not prove that Hootman's mental impairments met or equaled listing 12.08. (Admin. R. 20.) The claimant has the burden of meeting each element described in the listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). The ALJ found that Hootman did not meet the "paragraph B" requirements of listing 12.08, which require her mental impairments to result in at least two of the following: "marked restrictions of activities of daily

living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (Admin. R. 20.) Here, a marked limitation means more than moderate but less than extreme, and repeated episodes of decompensation means either three episodes in one year or an average of one every four months, each lasting for at least two weeks. (*Id.*)

When the evidence that the ALJ properly determined not to be credible is filtered out, Hootman is unable to meet her burden to demonstrate that she meets or equals all the requirements of listing 12.08. The ALJ determined that her limitations were not "marked" in terms of daily activities, social functioning, and maintenance of concentration, persistence, and pace. (*Id.*) She has been able to perform chores, shop, cook, and attend church. (Ex. 3F, Admin. R. 243-252.) She presents as pleasant, and has a friend with whom she gets along. (Ex. 3F, Admin. R. 243-252.) She performed well on a mental status exam performed by Dr. Brischetto, and seemed able to focus during the session. (Ex. 3F, R. 243-252.) There is no evidence to indicate that the claimant has experienced decompensation lasting for periods of more than two weeks since the alleged onset date. (Admin. R. 20.)

Though Hootman alleges that the ALJ erred by failing to develop the record fully in regards to the step three analysis, the ALJ had sufficient evidence to conclude that the claimant did not meet or equal the 12.08 listing. In social security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that claimant's interests are considered, even when claimant is represented by counsel. *See* 42 U.S.C.A. Sec. 301 et seq. The ALJ's duty to develop the record further in a social security disability case is triggered when there is ambiguous evidence, or when the record is inadequate to allow for proper evaluation of evidence. (*Id.*)

FINDINGS AND RECOMMENDATION          10                    {MEC}

In this case, the ALJ determined that, based on the record, Hootman's limitations did not meet or equal a 12.08 listing. (Admin. R. 21.) The ALJ states that the claimant did not demonstrate either "marked" limitations or "repeated" episodes of decompensation. (Admin. R. 20.) While Hootman claims that the ALJ did not develop the record fully because she found that Dr. McDevitt was vague with regard to Hootman's limitations, the ALJ notes that where Dr. McDevitt had difficulty estimating some of claimant's limitations, Dr. Brischetto's reports supplied additional information. (Admin. R. 23.) The ALJ had sufficient information to properly evaluate evidence, and thus, viewing the record as a whole, did not fail to adequately develop the record.

The ALJ had substantial evidence to support her conclusion that Hootman's limitations did not meet or equal a 12.08 listing under the "paragraph B" criteria. The ALJ properly transplanted the lack of severity of Hootman's complaints into the residual functioning capacity assessment.

## V. Step Five Analysis

An ALJ may use a vocational expert to help determine whether a claimant can transfer her residual skills in other work. *Lewis*, 236 F.3d at 517. "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis*, 236 F.3d at 517 (citing *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275 (9th Cir. 1987)). However, the ALJ need not incorporate testimony which has been otherwise discredited into her step five analysis. *Batson*, 359 F.3d at 1197.

The ALJ determined that there were sufficient jobs in the national economy for someone limited to simple tasks with limited to no interaction with others. (Admin. R. 21.) The ALJ made this determination based on the RFC as determined above, coupled with the testimony of a vocational expert. Hootman alleges error because the ALJ did not consider "all" of Hootman's

limitations, and did not submit the full list of claimed limitations to the vocational expert. The ALJ is not required to do so. The ALJ properly submitted to the vocational expert what she had determined Hootman's limitations to be, in line with the credible testimony presented at the hearing. The ALJ had previously determined Hootman's limitations to be "simple tasks" with limited social interaction and no interaction with the public. The ALJ asked the vocational expert if there were jobs existing in the national economy which involved simple tasks and "not interaction with the public"(Admin. R. 441), and further clarified that the hypothetical was restricted to "minimal social interaction in terms of working with others" (Admin. R. 442). The hypothetical thus included all of Hootman's restrictions, as previously determined by the ALJ.

Hootman also alleges that the ALJ erred in accepting the testimony from the vocational expert that she could perform the jobs of janitor, dishwasher, and laundry worker. Hootman alleges that the Dictionary of Occupational Titles ("DOT") classifies these jobs as requiring reasoning level two, beyond her RFC restriction to "simple tasks."

Even if the DOT raises a presumption about the reasoning level required to perform a job, that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Though the parties dispute whether the RFC limitation to "simple tasks" includes jobs with a reasoning level of two, that determination is not consequential to this case. The ALJ found that the claimant was able to perform daily functions such as housework, cooking, and doing laundry. (Admin. R. 24.) The ALJ noted that these activities "are consistent with an ability to perform work-related activities." (*Id.*) The claimant's daily activities support whatever deviation there may have been from the DOT. The ALJ did not err in accepting

FINDINGS AND RECOMMENDATION              12                          {MEC}

the opinion of the vocational expert that there are jobs in the national economy that the claimant may perform.

## Conclusion

For the reasons stated above, the ALJ's ruling on the Commissioner's underlying decision should be AFFIRMED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 19, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 5th day of August, 2011.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge